Charles Brent BEARD, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2008–SC–000079–DG.

Supreme Court of Kentucky.

Jan. 21, 2010.

Joseph Brandon Pigg, Assistant Public
Advocate, Department of Public Advocacy,
Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Ken-
neth Wayne Riggs, Joshua D. Farley, As-
sistant Attorneys General, Attorney Gen-

eral's Office, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

Appellant, Charles Brent Beard, appeals the decision of the Court of Appeals affirming his conviction for drug trafficking. He raises only one assignment of error: that his appointed trial counsel had a sufficient conflict of interests that the trial court's failure to appoint different counsel constituted reversible error. This Court agrees that the trial court erred and therefore reverses.

## I. Background

Appellant's arrest and conviction resulted from series of controlled buys performed by Jackie Davis for the police. Davis, who was on probation at the time, had approached the police and offered to assist them as a confidential informant. Though it was against Probation and Parole policy for Davis to participate in a police operation without prior approval by his probation officer, the police did not know he was on probation and Davis did not volunteer that fact. Over the course of three buys, Davis purchased marijuana and methamphetamine, allegedly from Appellant.

Prior to trial, Appellant filed a *pro se* motion to dismiss his attorney, Jason Pfeil, and to have new counsel appointed due to a conflict of interests. He claimed that Pfeil had a conflict because he represented two other clients, Jackie Davis and Ron Damron, whose interests were adverse to him. At a hearing on the matter, the trial court asked Appellant how he felt that the representation of Davis was a conflict of interests, to which he replied, "How could it not be a conflict of interest when he's sitting here and he's going to defend me at trial but here he's going to defend this man for a P.B. revocation hearing or whatever it's called? He represented Jackie Davis to get him probation." The judge then stated, "But that was unrelated to your case." Appellant replied by noting that it was the same person who "brung these charges against" him. The trial court then asked Appellant how he had been prejudiced by his attorney's representation of the other clients. Appellant had no good answer, stating only that it may have put "bad thoughts" in his attorney's mind and made him think that Appellant was guilty. The judge then gave Pfeil an opportunity to address the claims.

Pfeil admitted that he had previously represented Jackie Davis in a criminal case that resulted in probation. Also, Davis was in danger of having his probation revoked for failure to report, and Pfeil had been appointed to again represent him. Pfeil indicated that upon being reappointed to represent Davis, one of the things he wanted to explore was the extent to which Davis had cooperated in any other investigation with the Commonwealth "because that might have some bearing on whether or not he gets revoked again." He also stated that before the revocation motion could be heard, the Commonwealth moved to have it held in abeyance, presumably to see how Davis performed in the cases in which he was to be a witness. He stated that the motion was still pending and that he would represent Davis in the future if the motion was pursued, at which time he would address any cooperation between Davis and the Commonwealth "because that has some bearing on this court's decision."

Pfeil admitted he had also questioned Appellant in the course of representing Ron Damron in another criminal case. Pfeil had obtained a recess during Damron's trial to talk to Appellant at the local jail about Damron's case (specifically about

his relationship with Damron and the victim in Damron's case). Pfeil stated that Appellant told him he knew nothing about the other case.

Thus, Pfeil effectively admitted Appellant's factual claims about his representation of Davis and Damron, but he went even further in noting that the matter against Davis was still pending and that Davis's performance could affect the outcome of this matter. Nevertheless, Pfeil indicated that he saw no conflict and stated, "I defend everyone that I am appointed to represent equally."

The judge stated that a conflict would arise as to Davis only if Pfeil had learned anything during that representation that might be beneficial to Appellant's case that he then did not disclose. Pfeil stated that he had not learned any such information.

After hearing this discussion, the trial court denied Appellant's motion, noting on the docket sheet that the "Court finds no evidence to support Def[endant]'s claim of conflict of interest."

Appellant's defense at trial consisted of an attack on Davis's credibility and the police's compliance with the rules concerning use of informants. His attorney specifically asked Davis why he had not told the police he was on probation, to which Davis responded that he did not know he was on probation. He also asked Davis about the probation violation, to which Davis replied that he did not report because he had not known he was on probation.

The Court of Appeals affirmed Appellant's conviction, holding that Appellant failed to show prejudice because his attorney actually represented him vigorously. The court noted, "Indeed, Beard failed to show in any way how the performance of his counsel was adversely affected by counsel's prior representation of the Commonwealth's chief witness or that his defense was otherwise prejudiced." In reaching its decision, the court cited *Kirkland v. Commonwealth*, 53 S.W.3d 71 (Ky. 2001), which it read as requiring a showing of prejudice for a claim of conflict of interests to succeed.

This Court granted discretionary review to address the proper standard to apply to claims of a conflict of interests between a criminal defendant and defense counsel.

## II. Analysis

The basic question in determining the proper standard to apply to Appellant's case is whether he was required to demonstrate prejudice. The Court of Appeals in this case relied on a single line from *Kirkland* stating that "a defendant must show an actual conflict of interest adversely affected the performance of his lawyer." *Id.* at 75. The Court of Appeals thus read *Kirkland* as requiring that a defendant make a specific showing of prejudice when claiming a conflict of interests, and then concluded that Appellant had failed to do so. *Kirkland*, however, is inapplicable to this case.

In *Kirkland*, this Court held that the harmless error rule applied to a trial court's failure to notify a defendant of a potential conflict as required by RCr 8.30(1) where his attorney worked in the same DPA office as the attorney for his codefendant. Admittedly, this amounted to a holding that a showing of prejudice was necessary in that case, which led the Court to require an actual conflict that adversely affected defense counsel's performance.

But the Court's ruling in that case turned on the determination that "the record supports the clear conclusion that no claim of conflict of interest arose at trial and none is identified on appeal because no such conflict of interest ever actually exist-

ed." *Id.* The facts in *Kirkland* were substantially different than in this case because in *Kirkland* no claim of a conflict was ever raised or shown at trial. In fact, as the Court noted, "The narrow issue before this Court is whether there is a presumption of a conflict of interest when an RCr 8.30 waiver is not executed and each defendant has his or her attorney, but those two attorneys work for the same legal aid or public defender's office." *Id.* at 74.

One of the cases that *Kirkland* primarily relies on, *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), was an attempt to address the issue of conflicts of interests that are not raised at trial. *Cuyler* noted in language later employed in *Kirkland* that "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348, 100 S.Ct. 1708. *Cuyler,* however, did not create a broadly applicable rule as it answered only the question that had been left open in *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), in which the conflict issue had been raised at trial.

■ *Holloway* provides the analytical framework for a claimed conflict of interests that is actually raised at trial. In that case, the Court held that the harmless error rule (i.e., a showing of prejudice) was inapplicable where a conflict of interests is shown and raised at trial, noting that "a rule requiring a defendant to show that a conflict of interests—which he and his counsel tried to avoid by timely objections to the joint representation—prejudiced him in some specific fashion would not be susceptible of intelligent, evenhanded application." *Id.* at 490, 98 S.Ct. 1173. The Court went so far as to state that "whenever a trial court improperly requires joint representation over timely objection *rever-*

*sal is automatic." Id.* at 489, 98 S.Ct. 1173 (emphasis added). This is because such a conflict of interests has the effect of denying the defendant the Sixth Amendment right to counsel because the attorney has an incentive not to act in one of the defendants' best interest. *Id.* at 489–90, 98 S.Ct. 1173 ("Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. . . . The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters. . . . [I]n a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process."); *see also Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680 (1942), *superseded in part on other grounds by Rule,* Fed.R.Evid. 104(a) ("[T]he 'Assistance of Counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests. If the right to the assistance of counsel means less than this, a valued constitutional safeguard is substantially impaired.").

Though *Holloway* specifically addressed joint representation of codefendants in the same trial, ultimately, a conflict is a conflict. Thus, the *Holloway* rule is equally applicable where an attorney represents defendants with conflicting interests in separate matters, at least where those conflicting interests converge at the trial of one of the defendants, as was the case here. Because Appellant raised the conflict issue at trial, *Holloway* provides the controlling standard, not *Cuyler* or *Kirkland.*

The rule in *Cuyler* and *Kirkland* is only for when the alleged conflict was not raised at trial (usually because the alleged conflict was not disclosed to the defendant), whereupon it becomes an issue akin to a claim of ineffective assistance of counsel.

Because Appellant raised the issue at trial, the proper inquiry then is whether Appellant raised an actual conflict at trial, not whether he was prejudiced by Pfeil's representation of other defendants. This is a more difficult question, at least in part because the trial judge addressed it and concluded there was no evidence of a conflict.

The problem with the way the trial court looked at the alleged conflict is that she confused prejudice resulting from the conflict with the conflict itself. The Commonwealth has continued to address the existence of a conflict in this manner, arguing essentially that because Appellant has not shown prejudice, he suffered only a potential conflict, and that a "real" conflict did not exist.

█ A conflict arises from competing duties or interests that create the *potential* for prejudice. The conflict does not come into being only when the potential turns into actual prejudice; it exists from the instant that inconsistent duties or interests arise. Thus, a conflict of interests is generally thought of as both "[a] real or *seeming* incompatibility between the interests of two of a lawyer's clients...." *Blacks Law Dictionary* 318 (8th ed. 2004) (emphasis added). Actual prejudice is not necessary for the conflict to exist.

This is in fact why *Holloway* discusses the impossibility of evaluating a conflict that is raised at or before trial—i.e., before the competing interests are played out—for harmless error. The prejudice is merely a potential at that point in that it would result only if counsel refrained from doing something in his client's interest, when, in fact, counsel may not actually refrain from doing anything and may instead zealously represent the client.

With this view of conflicts in mind, this Court concludes that Appellant's trial counsel had multiple conflicts of interests from his representation of Appellant, Davis, and Damron.

The obvious conflict stems from the duty of zealous representation, which Pfeil owed to both Appellant and Davis. As Pfeil himself noted, Davis's performance as a confidential informant would be a factor in the subsequent probation revocation hearing at which Pfeil would represent Davis. Thus, this case is different from one in which defense counsel has only previously represented the adverse witness. Going forward, Pfeil had two clear options: he could either pursue Davis vigorously on cross-examination and seek to impeach him, which would require possibly asking incriminating questions (e.g., by inferring that Davis knowingly violated his probation), or he could go easy on Davis in the hopes of maximizing his chances at the probation revocation hearing. Either option would require that Pfeil help one client at the expense of the other, and thus neither would be permissible.

Nor could Pfeil attempt to balance the interests of his clients by, for example, semi-vigorously cross-examining Davis in the hopes of assisting Appellant but pulling the punch sufficiently to avoid harming Davis's chances at the probation revocation hearing. This would be a worse alternative, as it would require doing only half the job for both clients. Such a course of action, rather than harming one client, would harm both by denying them full representation.

It may be that Pfeil chose to actively pursue and confront Davis, sacrificing his

interests in favor of Appellant (in which case, only Davis could complain). The Court of Appeals disposed of the case in this way, finding that Pfeil had vigorously defended Appellant. But as noted in *Holloway*, making such a determination is effectively impossible, because any rule requiring Appellant to show specific prejudice "would not be susceptible of intelligent, evenhanded application." 435 U.S at 490, 98 S.Ct. 1173. And while we know what Pfeil did do at trial, we cannot know what he may have refrained from doing because of his concurrent representation of Davis. Such a conflict when raised (and not remedied) at trial requires automatic reversal because it results in a structural error. Thus, regardless of how Pfeil actually chose to run the gauntlet between Davis and Appellant, the conflict existed, was raised at trial, and requires reversal.

. The subtler but no less real conflict stemmed from Pfeil's directly competing duties of confidentiality and disclosure of information to his clients. Pfeil had a duty of confidentiality that required him not to disclose information learned from Davis in the course of representing him in the revocation process. But Pfeil also had a duty to disclose to Appellant any information that might have been helpful to his defense, including what he learned from Davis. These duties are in direct conflict with each other and cannot be reconciled. Under *Holloway*, such a conflict violates the Sixth Amendment and requires reversal.

In the end, Pfeil represented a client (Davis) who was to testify against another client (Appellant) in a proceeding that, depending on the client's performance, would likely have some effect on another proceeding involving the client (Davis) at which Pfeil would represent him. Though the proceedings against Davis and Appel-lant were not directly related, they became inextricably intertwined because Davis was to be the prosecution's main witness against Appellant and his performance in that capacity directly affected his own proceeding. In fact, Appellant and Davis essentially pointed the finger at each other in the course of the trial, with Davis testifying that he bought drugs from Appellant and Appellant claiming that Davis violated his probation (and thereby at least implying that he was lying). Despite the efforts of both Pfeil and the judge to treat the proceedings as unrelated, the simple fact of the matter is that Pfeil represented both a criminal defendant and a witness against that defendant who had an interest in the defendant being convicted. Davis was the nexus connecting the two cases. As some might say, Davis had a dog in both fights. Indeed, this Court agrees with Appellant, who when asked how a conflict could exist, stated, "How could it not be a conflict of interest?"

### III. Conclusion

Because Appellant's Sixth Amendment right to counsel was denied by the existence of a conflict of interests, and such an error cannot be harmless error, the conviction cannot stand. The Court of Appeals is therefore reversed. The judgment of the Crittenden Circuit Court is also reversed and this matter is remanded to that court for further proceedings as may be necessary.

All sitting. All concur.