RENDERED: MARCH 22, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2016-SC-000378-DG

DATE 4/12/18 Kim Redmon, DC

COMMONWEALTH OF KENTUCKY          APPELLANT

ON REVIEW FROM COURT OF APPEALS

V.

CASE NO. 2014-CA-001375-MR
MASON CIRCUIT COURT NO. 14-CR-00037

BRIAN MUCHRISON          APPELLEE

## OPINION OF THE COURT BY JUSTICE CUNNINGHAM

### REVERSING AND REINSTATING

In 2014, Appellee, Brian Muchrison, was tried and convicted by a Mason County Circuit Court jury of first-degree trafficking in a controlled substance and of being a first-degree persistent felony offender. He was sentenced to ten years' imprisonment. His conviction arises from the sale of a quantity of heroin to a confidential informant, Jennifer Suister ("Jennifer").

Jennifer had a romantic history with Appellee. She also had several other boyfriends around the time she executed the drug buy at issue here. One of her boyfriends was Christopher Trent. Trent had been arrested in Mason County for burglary and was represented by public defender Josh Hitch. Hitch would later represent Appellee.

Trent told Hitch that he had "someone else" helping him get a favorable bond recommendation from the Commonwealth but refused to identify the person.

Unbeknownst to Hitch, Jennifer had entered into an agreement with the Maysville Police Department to act as a confidential informant in exchange for Trent receiving a favorable bond recommendation from the Commonwealth. As a result, the Mason Circuit Court granted Trent's request for a surety bond. However, Trent violated the terms of his release and was subsequently arrested.

As Appellee's case proceeded to trial, he prepared an alternate perpetrator theory, arguing that Jennifer fabricated the drug transaction that led to his charges. Appellee contended that he met with Jennifer on the night of the alleged drug buy hoping to have sex, not to sell her drugs.

The day before Appellee's trial, the Commonwealth provided Hitch with discovery indicating that Jennifer had acted with the intention of "helping Christopher Trent with his current charges." She had been paid three hundred dollars and an extra one hundred dollars for every successful purchase she made.

Hitch immediately called the Kentucky Bar Association's Ethics Hotline. His contact there informed him that he had a conflict but that it would be several days before a formal letter could be issued confirming that opinion. Hitch also filed a motion to withdraw as Appellee's attorney. Although Trent had already been sentenced, Hitch noted that Trent may elect to file post-

conviction motions, which presumably would have required Hitch's continued representation. After a hearing on the motion to withdraw, the trial court denied the motion; the trial court ordered Hitch to continue representing Appellee and discontinue representing Trent post-conviction.

At Appellees' trial, Hitch attempted to impeach Jennifer's testimony concerning her need for money to pay her living expenses as the primary reason for fabricating her story that Appellee sold her drugs. Further, as the Appellee admits in his brief, Hitch also questioned Jennifer "about whether her motivation for working as a confidential informant was to receive favorable bond treatment for Mr. Trent . . . ." In addition to Jennifer's testimony, the Commonwealth introduced a recording of the drug buy. Although the video was of poor quality, the audio was discernable.

As previously stated, Appellee was convicted and sentenced to a total of ten years' imprisonment. In a split decision, the Court of Appeals held, inter alia, that the trial court erred by failing to grant counsel's motion to withdraw. As such, the Court of Appeals reversed Appellee's conviction and sentence. This Court granted the Commonwealth's motion for discretionary review. Having reviewed the record and the law, we reverse the Court of Appeals and reinstate Appellee's conviction and sentence.

## Analysis

The issue here involves an alleged denial of Appellee's Sixth Amendment right to conflict-free counsel. *Glasser v. United States*, 315 U.S. 60, 70 (1942), *superseded in part on other grounds by* Fed. R. Evid. 104(a) ("[T]he 'Assistance

3

of Counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests."); *see also Bartley v. Commonwealth*, 400 S.W.3d 714, 719 (Ky. 2013). These questions of law will be reviewed de novo. *Commonwealth v. Parrish*, 471 S.W.3d 694, 697 (Ky. 2015). We also note that "in contrast to claims raised for the first time post-conviction, there is no requirement [in the present case] that the defendant show a conflict actually prejudiced him or impacted his counsel's performance in some way." *Samuels v. Commonwealth*, 512 S.W.3d 709, 713 (Ky. 2017) (citing *Beard v. Commonwealth*, 302 S.W.3d 643, 645–47 (Ky. 2010)). "[T]he adequacy of the assistance [] provided in representing [the defendant] is irrelevant to that inquiry." *Id.*

The Court of Appeals correctly defined the heart of the present issue as follows:

> [Mr. Hitch's] position was that his representation of Trent, and the ethical responsibilities inherent therein, precluded him from fully exploring exculpatory facts in his cross-examination of [Jennifer], which prevented him from fully presenting [Appellee's] defense.

In its order denying Hitch's motion to withdraw, the trial court stated that "[t]he information [of the confidential informant's identity] comes from the Commonwealth, and only confirms a vague statement made by Mr. Trent." The court further noted that the information was "not detrimental to Trent" and that the information was "not confidential in that it was known to and provided by the Commonwealth."

4

In reversing the trial court's order denying the motion to withdraw, the Court of Appeals reasoned:

> [t]hat his responsibilities to Trent would affect his cross-examination of [Jennifer] to [Appellee's] detriment is a reasonable belief in this situation, particularly in light of the fact that Trent still expected trial counsel to file post-conviction motions. A client's reasonable belief or expectation that a lawyer will undertake representation is all that is necessary to create a current attorney-client relationship. [Citations omitted]. The trial court's ruling diminishes the fact that trial counsel's original source of information, which he would later need in order to effectively represent another client [Appellee], was a confidential communication with his client [Trent].

The Court of Appeals also cited Supreme Court Rule ("SCR") 3.130(1.7) in support of its conclusion that there was a conflict of interest here. Subsection (a)(2) of that rule precludes an attorney from representing a client when "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."

Hitch's initial concern after receiving the Commonwealth's notification of the relationship between Trent and Jennifer is certainly understandable. The acknowledgment by the ethics hotline representative adds efficacy to this claim. However, we ultimately disagree with that determination. Although there was technically an "overlap" in Hitch's representation of Trent and Appellee, we fail to see any conflict of interest here. *Samuels*, 512 S.W.3d at 713.

Similar to our decision in *Samuels*, "[w]hen the totality of the circumstances [is] examined, it becomes clear that [Appellee] has not

5

demonstrated that his lawyer was burdened by an actual conflict of interest during [his] representation of him." *Id.* at 716. More precisely, there was no "significant risk" that the information provided by the Commonwealth concerning the relationship between Trent and Jennifer "materially limited" Hitch's responsibilities to either Appellee or Trent. SCR 3.130(1.7). In other words, there was no ethical impediment to cross-examining Jennifer regarding her relationship and agreement with Trent, and further arguing that Jennifer fabricated the drug transaction that led to Appellee's arrest. In fact, Hitch did cross-examine Jennifer concerning her relationship with Trent and how that impacted her motivation for working as a confidential informant.

We also note that Appellee's charges were completely unrelated to Trent's charges. Moreover, Trent had been sentenced and was in the custody of the Department of Corrections when Hitch filed his motion to withdraw. Any *potential* conflict that may have arisen here was ameliorated by the trial court's order that Hitch withdraw from representing Trent post-conviction before Appellee's trial began. As such, any post-conviction motions that Trent may have desired to file could have been raised by another court appointed attorney.

Therefore, the trial court correctly denied the motion to withdraw. Any additional issues concerning defense counsel's representation of Appellee that resulted from counsel's good faith, albeit erroneous perception of a conflict of interest, may be addressed by Appellee through the proper post-conviction process.

## Conclusion

For the reasons stated herein, we hereby reverse the decision of the Court of Appeals and reinstate Appellee's conviction and sentence.

Minton, C.J.; Cunningham, Hughes, Keller, Venters, and Wright, JJ., sitting. Cunningham, Keller, Venters, and Wright, JJ., concur. Minton, C.J.; and Hughes, J., concur in result only. VanMeter, J., not sitting.

COUNSEL FOR APPELLANT:

Andy Beshear
Attorney General of Kentucky

Leilani K.M. Martin
Assistant Attorney General

COUNSEL FOR APPELLEE:

Jason Apollo Hart
Assistant Public Advocate

Linda Roberts Horsman
Assistant Public Advocate