RENDERED:  DECEMBER 2, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0519-MR

ANTHONY WATTS                                              APPELLANT

                  APPEAL FROM HENDERSON CIRCUIT COURT
v.                   HONORABLE KAREN LYNN WILSON, JUDGE
                          ACTION NO. 18-CR-00184

COMMONWEALTH OF KENTUCKY                         APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; COMBS AND DIXON, JUDGES.

DIXON, JUDGE:  Anthony Watts appeals *pro se* from an order of the Henderson Circuit Court, entered May 21, 2019, denying his RCr[1] 11.42 motion.  After careful review of the briefs, record, and law, we affirm.

---

[1] Kentucky Rules of Criminal Procedure.

# BACKGROUND FACTS AND PROCEDURAL HISTORY

On April 4, 2018, Watts was indicted for the murder of Angela

Parker, being a convicted felon in possession of a handgun, and being a persistent

felony offender in the second degree.  Per the complaint:

> [O]n 2/26/2018, members of the Henderson Police Department responded to . . . a report of a female that had been shot.  Upon arrival, officers located [Parker] in the back bedroom laying [in] the bed[, and she] appeared to have multiple gun shots to her arm and head.

> [Kenya Robards and her juvenile daughter were in] the home at the time of arrival. . . .  [Watts], the father of her daughter, had been in town this weekend[, but he had returned] to Covington after they had lunch on 02/25/2018.  [Robards] stated that [Watts] and [Parker] were fighting via text on the night of 02/25/2018.  [Robards] woke up around 3:00 am on 02/26/2018 to [Watts] coming through the back patio door, which leads directly to the back bedroom. . . .  [Parker] and [Watts] started to argue and [Robards] went to check on her daughter. . . .  [Parker] had a gun in her hand when [Robards] left the room.  [Robards] heard two gunshots and went back to the bedroom and saw [Watts] standing beside the bed[.]  [Robards] asked [Watts], "What the f[***] did you do?".  [Watts] replied back[,] "What the f[***] I told her I was going to do."

>     . . . .

> Detectives located a handgun on the headboard shelf behind [Parker]'s body.  The handgun appeared to have been neatly placed there, not thrown or dropped. . . . [T]he handgun is believed not to be the handgun used to shoot [Parker].  [Parker] was pronounced dead at the scene[.]

(Paragraph breaks added.)

Watts was represented by Shannon Powers and Tina McFarland. On October 31, 2018, after a lengthy and thorough colloquy, Watts entered an *Alford*[2] plea on the murder charge, the remaining charges were dismissed, and he was sentenced to 20 years to serve – the minimum – by judgment entered November 16, 2018. On April 15, 2019, Watts filed a motion to vacate his conviction pursuant to RCr 11.42. The motion was denied without a hearing by order entered May 21, 2019, and this appeal followed. We will introduce additional facts as they become relevant.

## STANDARD OF REVIEW

Where an RCr 11.42 motion is denied without an evidentiary hearing, "[o]ur review is confined to whether the motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction." *Lewis v. Commonwealth*, 411 S.W.2d 321, 322 (Ky. 1967); *see also Harper v. Commonwealth*, 978 S.W.2d 311, 314 (Ky. 1998). It is the movant's responsibility to plead with sufficient specificity the factual basis supporting an RCr 11.42 motion. RCr. 11.42(2); *Hodge v. Commonwealth*, 116 S.W.3d 463, 468 (Ky. 2003), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009).

---

[2] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

Since Watts entered a plea, to successfully demonstrate that he was afforded ineffective assistance of counsel he must show:

> (1) that counsel made errors so serious that counsel's performance fell outside the wide range of professionally competent assistance; and (2) that the deficient performance so seriously affected the outcome of the plea process that, but for the errors of counsel, there is a reasonable probability that the defendant would not have pleaded guilty, but would have insisted on going to trial.

*Bronk v. Commonwealth*, 58 S.W.3d 482, 486-87 (Ky. 2001). *See also Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "The likelihood of a different result must be substantial, not just conceivable." *Commonwealth v. Pridham*, 394 S.W.3d 867, 876 (Ky. 2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 112, 131 S. Ct. 770, 792, 178 L. Ed. 2d 624 (2011)).

"[B]oth parts of the *Strickland* test for ineffective assistance of counsel involve mixed questions of law and fact[.]" *Brown v. Commonwealth*, 253 S.W.3d 490, 500 (Ky. 2008) (citing *McQueen v. Commonwealth*, 721 S.W.2d 694, 698 (Ky. 1986)). Unless clearly erroneous, we "must defer to the determination of facts and credibility made by the trial court." *Id.* We review *de novo* "counsel's performance and any potential deficiency caused by counsel's performance." *Id.*

# ANALYSIS

Watts first argues that since Parker was a prominent member of a small community and her death received media attention, his counsel's failure to seek a change of venue constituted ineffective assistance. In support, Watts asserts that death threats were made against him and Robards and refers us to six articles reporting on Parker's death.

As an initial matter, Watts's claim of deficient performance is refuted by his plea colloquy during which he expressly denied having any complaint with counsel's representation or there being any reason he could not get a fair trial. As Watts's plea occurred subsequent to his raising the issue of venue with counsel via letter written June 15, 2018, his concerns were knowingly waived. Moreover, we agree with the Commonwealth that Watts has not demonstrated he was prejudiced. Since Watts was sentenced in accord with his plea, a change of venue would have had no effect. *See McKinney v. Commonwealth*, 445 S.W.2d 874, 877 (Ky. 1969) ("[I]nasmuch as McKinney decided to plead guilty[,] a request for a change of venue would have been useless.").

Further, Watts has failed to establish that his request would have been successful. A change of venue shall be granted "if it appears that the defendant or the state cannot have a fair trial in the county where the prosecution is pending."

KRS[3] 452.210. The non-specific assertions that Parker was well-known and Watts and Robards received death threats provide an insufficient factual basis for this Court to evaluate the merits of the allegations.

As for the six articles – only four of which both name Watts and occurred prior to his plea – prejudicial news coverage can support a change of venue if it is "reasonably likely to prevent a fair trial." *Dunn v. Commonwealth*, 360 S.W.3d 751, 769 (Ky. 2012) (internal quotations omitted) (quoting *Wilson v. Commonwealth*, 836 S.W.2d 872, 888 (Ky. 1992), *overruled on other grounds by St. Clair v. Roark*, 10 S.W.3d 482 (Ky. 1999)). Here, while detrimental in that the articles named Watts as the alleged perpetrator and noted he was on federal probation at the time of Parker's death, the four relatively brief and restrained articles were published at least six months prior to his anticipated trial date by a singular online news source.

In concluding Watts has failed to meet his burden of proof, we note that Kentucky courts have consistently denied a change of venue in far more publicized cases than this. *See Hubers v. Commonwealth*, 617 S.W.3d 750, 773 (Ky. 2020) (substantial news coverage both by local stations and several national organizations, and defendant's police interview was widely shared on social media); *Hilton v. Commonwealth*, 539 S.W.3d 1, 7-8 (Ky. 2018) (all but four of the

---

[3] Kentucky Revised Statutes.

jurors initially called for service reported knowledge of some media coverage of the case); *Wood v. Commonwealth*, 178 S.W.3d 500, 513-14 (Ky. 2005) (95 percent of jury pool was exposed to pretrial publicity). The law is clear, media coverage alone is insufficient to support a change of venue. As this is the only non-speculative evidence offered by Watts and the media coverage was not so exceptional as to merit a presumption of prejudice, the court did not err in denying a hearing on this issue.

Next, Watts contends counsel was ineffective by failing to interview three witnesses – Brittany Harrelson, an unnamed person who is identified as the sister of Lashawda Black, and Brooke Wolfe – who were necessary to his self-protection defense. Citing the transcript of counsel's interview of Robards as proof, Watts states that Harrelson and Black's sister would have verified that Parker stated she selected a coffin for Watts and wanted to kill him. Likewise, Wolfe would have confirmed that on multiple occasions Parker said she wanted to shoot Watts to wound him, but not to kill him because he had a daughter. Watts argues this evidence supports his and Robards's claims that Parker brandished a weapon the night he shot her and renders it reasonable for him to have rejected the plea and proceeded to trial in order to pursue a self-protection defense. We agree with the Commonwealth that Watts has failed to establish that he was prejudiced.

> [W]here the alleged error of counsel is a failure to
> investigate or discover potentially exculpatory evidence,

the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

*Hill*, 474 U.S. at 59, 106 S. Ct. at 370.

Although the record does not establish whether counsel interviewed the three witnesses, Watts admits that his counsel discovered evidence of Parker's threatening statements and was made aware of the potential corroborating witnesses from interviewing Robards prior to entry of the plea. Accordingly, we cannot say that counsel's alleged failure to further develop redundant testimony adversely impacted counsel's plea advice. Moreover, we disagree with Watts's assessment that this evidence likely would have benefitted a self-protection defense at trial and, thus, rendered it reasonable for him to reject a plea to the minimum on the charged offense.

As a general rule, evidence of the victim's character for violence may be introduced to support a self-protection defense only "in the form of [a] reputation or opinion, not specific acts of misconduct." *Saylor v. Commonwealth*, 144 S.W.3d 812, 815 (Ky. 2004). "An exception exists, however, when evidence of the victim's prior . . . threats . . . is offered to prove that the defendant so feared the victim that he believed it was necessary to use physical force[,]" but the

defendant must have been aware of the statements at the time of the encounter.  *Id.* at 815-16 (citations omitted).  Here, Watts does not assert that he was aware of Parker's threats at the time of the shooting, so it is questionable whether this evidence would have been admissible.

Even if admissible, we cannot say the evidence is of such a caliber that Watts would likely have fared better at trial.  "The use of deadly physical force by a defendant upon another person is justifiable . . . only when the defendant believes that such force is necessary to protect himself against death, serious physical injury, . . . [or a] felony involving the use of force[.]"  KRS 503.050(2).  However, the defense is not available when "[t]he defendant, with the intention of causing death or serious physical injury to the other person, provokes the use of physical force by such other person" or was the initial aggressor.  KRS 503.060(2)-(3).

From the complaint and the transcript of Robards's interview, the evidence shows that after fighting with Parker via text the preceding evening, Watts entered, without permission, the residence[4] and bedroom where Robards and Parker were sleeping at 3:00 a.m., immediately began a verbal altercation, stating "[d]o y'all think this is a joke," and was armed with the handgun he ultimately

---

[4]  The limited record does not reveal who owned the residence or what legal right Watts or Parker had thereto, so it is unclear if the castle doctrine is applicable.

used to shoot Parker.  As none of the witnesses listed by Watts was present at the scene, their corroboration of Parker's general animus does nothing to counteract the credible implication that Watts provoked or initiated the aggression or otherwise serve to mitigate his penalty risk of 20 to 50 years, or life.  *See* KRS 532.025; KRS 532.030.  Consequently, the court did not err in denying relief on this matter.

Watts additionally contends that the cumulative effect of counsel's deficient representation prevented his plea from being knowing, intelligent, and voluntary.  Cumulative error may be found only when "the individual errors were themselves substantial, bordering, at least, on the prejudicial."  *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010).  "Where, as in this case, however, none of the errors individually raised any real question of prejudice, we have declined to hold that the absence of prejudice plus the absence of prejudice somehow adds up to prejudice."  *Id.* (citing *Furnish v. Commonwealth*, 95 S.W.3d 34 (Ky. 2002)).  Therefore, Watts's claim fails.

Finally, we turn to Watts's allegation that his counsel had a conflict of interest.  It is not disputed that a criminal defendant has the right to conflict-free counsel.  *Samuels v. Commonwealth*, 512 S.W.3d 709, 712 (Ky. 2017).  "A conflict arises from competing duties or interests that create the *potential* for prejudice."  *Beard v. Commonwealth*, 302 S.W.3d 643, 647 (Ky. 2010).  The

standard for determining whether a defendant is entitled to relief depends upon when the conflict is raised. *Samuels*, 512 S.W.3d at 712-13. If raised pre-conviction, a defendant "need only show that a conflict of interest existed[,]" but if first raised on post-conviction, a defendant must also establish that the conflict "prejudiced him – i.e., that it adversely affected his counsel's performance – in some cognizable way." *Id.* In the plea context, prejudice is established if the conflict adversely affected the voluntary nature of the defendant's guilty plea. *Mitchell v. Commonwealth*, 323 S.W.3d 755, 760 (Ky. App. 2010) (quoting *Thomas v. Foltz*, 818 F.2d 476, 480 (6th Cir. 1987)).

Here, the Commonwealth argues the latter standard applies as the issue was not raised until the underlying RCr 11.42 motion was filed. Conversely, Watts asserts the former should apply because he attempted to address his concerns through a letter to the trial court that counsel failed to file on his behalf. Assuming *arguendo* the validity of Watts's contention that a thwarted attempt to raise the conflict prior to conviction necessitates a review under the more lenient standard, his declaration of fact is refuted by the record as the referenced letter is silent as to the alleged conflict, and Watts denied any concerns with counsel during his plea colloquy. Accordingly, to be successful, Watts must establish both that a conflict existed and that he was prejudiced.

In support, Watts recounts that McFarland, who was assistant counsel on his defense team, advised at their initial meeting that she was a longtime, close family friend of the victim's mother and a member of the same church as the Parker family.[5] McFarland explained that, as it was a small town, lots of people know one another. Watts attributes this relationship with counsel's failure to seek a change of venue, to interview witnesses, and to pursue his self-protection defense, all of which we have addressed above.

The trial court disagreed that McFarland's relationship created a conflict and, after noting that Powers was lead counsel, found that counsel collectively provided reasonable professional assistance under the facts and that Watts's plea was voluntary. While the record does not conclusively establish that McFarland did not have a conflict, having previously rejected Watts's various charges of ineffective assistance of counsel which underlie this claim, we agree that Watts has failed to demonstrate that his decision to enter a plea was adversely impacted.

**CONCLUSION**

Therefore, and for the foregoing reasons, the order of the Henderson Circuit Court is AFFIRMED.

---

[5] In this section of his brief, Watts additionally complained of Powers's representation; however, as Watts did not identify any facts which could support finding Powers had a conflict of interest, we have declined to address these unrelated grievances.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Anthony Watts, *pro se*
Sandy Hook, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky