**Harold McQUEEN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

Sept. 25, 1986.

Rehearing Denied Jan. 22, 1987.

696

Linda K. West, Randall L. Wheeler, Asst. Public Advocates, Dept. of Public Advocacy, Frankfort, for appellant.

David L. Armstrong, Virgil W. Webb II, Penny R. Warren, Asst. Attys. Gen., Thomas J. Smith, III, Sp. Asst. Atty. Gen., Frankfort, for appellee.

WINTERSHEIMER, Justice.

This appeal is from an Order overruling an RCr 11.42 motion alleging ineffective assistance of counsel and challenging a conviction of murder and robbery and a sentence of death.

The murder occurred in 1980 during an armed robbery of a convenience grocery store. The store clerk was shot in the face and then in the back of the neck. Evidence of guilt was overwhelming. We affirmed the conviction in *McQueen v. Commonwealth*, Ky., 669 S.W.2d 519 (1984).

The United States Supreme Court refused to review the case. Thereafter a motion pursuant to RCr 11.42 was filed. A two-day hearing was conducted, and in 1985, the trial judge entered an extensive 27–page order overruling the motion. This appeal followed.

At trial McQueen was represented by appointed counsel, Jerome Fish, who has practiced law since 1957. McQueen was jointly tried with his half-brother Burnell, who was represented by retained counsel, John Lackey.

This case is controlled by the Federal case on the constitutional right to effective assistance of counsel, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A leading Kentucky case is *Gall v. Commonwealth*, Ky., 702 S.W.2d 37 (1985). The twin standard for such review is the proper measure of attorney performance or simple reasonableness under prevailing professional norms and whether the alleged errors of the attorney resulted in prejudice to the accused. The defendant must demonstrate that there is a reasonable possibility that, but for counsel's unprofessional errors, the result of the trial would have been different.

McQueen now argues that he was deprived of his Sixth and Fourteenth Amendment rights to the Federal Constitution and Section Eleven of the Kentucky Constitution because counsel did not advise him that he had a right to testify at the penalty phase of his trial; that his attorney relied on the attorney for his co-defendant whose interests were conflicting to take care of any pretrial motion practice and to interview witnesses; that counsel failed to seek a separate trial even though the defenses were allegedly antagonistic; that counsel failed to investigate the composition of the grand and petit juries; and that counsel failed to object to the trial court's reception of allegedly extra-judicial communications concerning a juror's views of the death penalty and of failing to poll the jury in that respect. He also argues that he was denied due process of law by the trial court's refusal to allow him to present evidence even by avowal concerning the juror's discharge; that the trial court's prohibition against further contact with jurors without permission of the court was improper; that he was denied a fair trial by the refusal of the trial court to consider the testimony of Richard Recever, a purported expert in the trial of death penalty cases; and that the trial judge improperly excluded evidence of prior inconsistent statements of trial defense counsel; and that it was error for the trial court to refuse to order the compulsory attendance of out-of-state witnesses; that it was error to refuse to order the provision of funds for neces-

sary expert witnesses for the RCr 11.42 hearing and that the prosecution was improperly permitted to cross-examine McQueen on matters not covered on direct and on matters that were incriminating.

■ *Strickland, supra,* provides that the defendant must show that counsel's performance was deficient. This requires errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Id.* 466 U.S. at 687, 104 S.Ct. at 2064, 2065. Also, the defendant must show that counsel's deficient performance prejudiced the defense i.e., that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

■ McQueen argues that Fish rendered ineffective assistance of counsel by failing to adequately advise him of his right to testify at the penalty phase of his trial, and had he been adequately advised of this opportunity, he would have testified as to his history of drug abuse and to the host of social and psychological maladies that beset him as a result of his drug abuse.

McQueen readily admits that he was fully advised by Fish and the trial court of his right to testify, and now, McQueen says that he understood his right to testify at the trial but that he did not specifically know that he could testify during the penalty phase of the bifurcated proceedings. At the time of trial McQueen unequivocally refused to testify and did not thereafter inform counsel that he wished to testify.

Counsel for McQueen asks Attorney Fish, "Did you discuss the possibility of McQueen testifying at trial?" Fish responded, "I discussed that possibility with Harold several times and Harold absolutely ... did not want to testify and his brother was not going to testify; We discussed that several times." Counsel for McQueen then asked, "when did you have those discussions?" Fish answered. "why ... My gosh ... all during the period." Fish was not asked the single question upon which McQueen now bases his appeal and his

argument that the evidence is unrefuted to support his contention. McQueen contends that the record of the RCr 11.42 hearing shows that Fish never stated that he advised McQueen that he had a right to testify at the *penalty* phase. The reason Fish never stated that had so advised McQueen is that Fish was never asked such a specific question at the 11.42 hearing. Under these circumstances the failure to specifically advise McQueen of his right to testify at the penalty-phase. did not constitute ineffective assistance of counsel.

■ The totality of the circumstances surrounding the original trial and the subsequent RCr 11.42 hearing provides ample evidence of the trial court's opportunity to see the witnesses and observe their demeanor on the stand, and recognition must be given to its superior position to judge their credibility and the weight to be given their testimony. *Kotas v. Commonwealth,* Ky., 565 S.W.2d 445 (1978).

The trial court had a right to resolve the credibility issue against appellant, and having found no abuse of the trial court's discretion, the first prong of the *Strickland* test is not met.

■ Secondly, McQueen has failed to establish prejudice required by *Strickland.* His proposed testimony sheds no light on the facts of the case and the defense of intoxication was established through other witnesses.

■ McQueen next contends that attorney Fish rendered him ineffective assistance by counsel's abdication of his independent professional responsibility to his client.

McQueen argues that Fish relied on counsel for McQueen's co-defendant Burnell for the pretrial motion practice and for the interviewing of potential witnesses. McQueen asserts that Fish relied too much on attorney Lackey, and that this reliance prejudiced his defense. Lackey's strategy in defense of Burnell was to convince the jury that his client was not the "triggerman." It is this strategy that presents the

conflict of interest that McQueen claims to be unconstitutionally prejudicial.

The conduct complained of by McQueen does not amount to an abrogation of counsel's duty to act as McQueen's personal advocate. The testimony was that Lackey and Fish agreed to have Lackey submit pretrial motions to the court which would be joined by Fish and be equally binding on each defendant. Further, the trial court allowed that any benefit arising from the pretrial motion of one party would inure equally to the other co-defendant. This conduct on the part of Fish does not indicate a sacrifice of McQueen's interests, nor does the testimony indicate that Fish in any way deferred to Lackey's judgment to the detriment of McQueen.

*Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) does not support McQueen's contention that prejudice to the defendant need not be demonstrated where a conflict of interest actually affects the adequacy of representation and that McQueen, therefore, need not prove prejudice. *See also, Glasser v. U.S.*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). *Culyer, supra,* involved multiple representation as did *Glasser, supra.* In *Glasser,* the court held that until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance of counsel. *See Glasser,* at 72–75, 62 S.Ct. 457, 465, 467, 86 L.Ed. 680. This proposition is reaffirmed in *Cuyler.* McQueen fails to establish that his counsel actively represented conflicting interests. There is no evidence of deficiency in Fish's performance. McQueen fails to point out any motion that may have benefited him that Fish failed to file because of his alleged over-reliance on Lackey, nor is there any evidence of any unpreparedness on the part of Fish with regard to any witness. In short, there is no showing that Fish made errors so serious that he was not functioning as the "counsel" guaranteed McQueen by the Sixth Amendment. There is also no showing of prejudice to the defense. *Strickland, supra.*

It is worth noting that the defendant asserted intoxication as his defense. It is uncontroverted and the record bears witness to the fact that Fish was prepared for trial and that witnesses were called by the defense to establish McQueen's intoxication.

■ McQueen's third contention is that attorney Fish rendered him ineffective assistance of counsel by failing to seek a separate trial from co-defendant Burnell.

A severance motion was made by counsel for Burnell and denied. It would have been of no consequence for a duplicate motion to have been made. The trial judge made it abundantly clear at the RCr 11.42 hearing that he believed joint trials were entirely proper. Severance is a matter of judicial discretion and not a constitutional right, and allegedly antagonistic defenses is only one of the factors for the trial judge to consider. *See Rachel v. Commonwealth,* Ky., 523 S.W.2d 395 (1975). Defense counsel committed no error and there is no evidence of prejudice to McQueen.

■ McQueen's fourth point is that Fish rendered ineffective assistance of counsel by failing to adequately prepare for the penalty phase of the trial.

An examination of the record indicates that defense counsel was prepared for the penalty phase. McQueen's mother admitted that the defense lawyer called her to his office to discuss the case. Fish testified that he did not believe the family, mother, aunt and stepfather, would be of benefit to McQueen. The defense attorney knew the family prior to the trial. He also knew McQueen and that he used drugs. He said that he tried to find teachers and employers as character witnesses, but no one was willing to testify. Attorney Fish did not agree with the tactics now urged by McQueen. All that has been established is that there was a possible difference of opinion, not reversible error. McQueen originally gave Fish very little, if anything, to work with. He did not mention any family or friends who could appear as character witnesses.

McQueen does not allege that Fish failed to produce penalty phase witnesses including a psychological expert and a clergyman to testify in his behalf. McQueen claims only that the wrong witnesses or not enough witnesses were called to testify. McQueen has thus failed to establish error and thereby failed to meet the *Strickland* test.

■ McQueen next contends that Fish rendered ineffective assistance of counsel for not seeking a change of venue. This allegation is refuted by the record. The decision whether to seek a change of venue was discussed early between Fish, Lackey and the defendants. Based upon his many years of experience, Fish determined that trial was best held in Madison County. Fish's strategy and reasons for not seeking a change of venue were: (1) Fish and Lackey thought Fayette County jurors would be more likely to recommend a death penalty; (2) in counsel's opinion, Judge Chenault was more competent to hear a death penalty proceeding than judges in adjoining counties; (3) the likelihood of an intelligent jury; and (4) based upon Fish's experience from living in the community all his life and practicing law there for many years, the pretrial publicity was not "bad." Fish's opinion was borne out at voir dire where only 68 jurors were needed to achieve a qualified panel of 32.

Defense counsel was not ineffective for not seeking a change of venue. After a discussion with other counsel, Fish as a matter of strategy, decided against such a motion. A similar claim was rejected in *Gall.*

■ McQueen's fifth contention is that Fish rendered ineffective assistance of counsel by failing to investigate the composition of the grand and petit juries for the underrepresentation of women.

The United States Supreme Court, in the case that provides us with the standard, held in part that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any inef-

fectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgment." *Strickland,* p. 466 U.S. at 691, 104 S.Ct. at 2066, 2067. At trial, counsel's decision was within the bounds of professional competence. Therefore, the first prong of the *Strickland* standard is not met.

Secondly, no prejudice to McQueen occurred. McQueen's case was heard by a jury consisting of seven men and seven women. The twelve jurors rendering a verdict consisted of six women and six men. McQueen argues that the population in Madison County is 52.6 percent female. McQueen's jury evinces a fair cross section of the community and in any event does not make out a prima facie case of systematic exclusion of a cognizable class in the jury selection process. *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Inasmuch as McQueen is a male, underrepresentation of women on the grand jury is not an issue which he can raise. *Ford v. Commonwealth,* Ky., 665 S.W.2d 304 (1984). There being no prejudice to the defense, McQueen also fails to establish the second prong of the *Strickland* standard.

■ McQueen's seventh argument of ineffectiveness is that trial counsel failed to object to the trial court's reception of extrajudicial communications concerning a juror's views on the death penalty, and for trial counsel's failure to poll the jury in an attempt to determine whether the remaining jurors believed that the disqualified juror was excused because that juror would not impose the death penalty under any circumstances.

This Court in *McQueen, supra,* held that the juror was dismissed based on the appearance of impropriety and on her violation of the admonition not to permit persons to discuss the case with her. With that in mind, it is logical to presume that reports of improper conduct might very well be communicated to the proper authorities extrajudicially.

The failure to object was not error, nor was counsel's failure to poll the jury concerning their perception of the juror's excusal.

■ McQueen's eighth contention that trial counsel Fish rendered ineffective assistance of counsel is based upon the cumulative effect of the alleged errors asserted in the seven previous arguments. The defense counsel was not ineffective as a result of cumulative error. In view of the fact that the individual allegations have no merit, they can have no cumulative value.

■ McQueen next argues that the trial court improperly refused to allow testimony of McQueen jurors concerning their perception of juror Winkler's dismissal from the jury. Furthermore, McQueen argues that the trial court incorrectly prohibited the Department of Public Advocacy investigator from interviewing the jurors. McQueen believes he should be allowed to interview the jurors concerning the impact of juror Winkler's dismissal on their verdict. The argument is without merit since the evidence is incompetent under RCr 10.-04 which states:

A juror cannot be examined to establish a ground for a new trial, except to establish that the verdict was made by lot.

See Gall, supra; Hicks v. Commonwealth, Ky., 670 S.W.2d 837 (1984) cert. den., 469 U.S. 1040, 105 S.Ct. 521, 83 L.Ed.2d 409. The trial court did not abuse its discretion.

The issue was fully considered in the direct appeal and properly decided by a majority of this Court.

■ McQueen's next contention is that the trial court denied him a fair hearing on the RCr 11.42 motion by its refusal to recognize a proposed expert death penalty attorney.

The trial court properly exercised its discretion on the competency of McQueen's expert. The testimony was allowed by avowal. The decision as to an expert witness's qualifications rests in the sound discretion of the trial court. Edwards v. Commonwealth, Ky. 554 S.W.2d 380, 385,

cert. den. 434 U.S. 999, 98 S.Ct. 642, 54 L.Ed.2d 495 (1977).

There is no basis for McQueen's argument that death penalty cases are so different as to represent an entirely different area of expertise. Strickland, supra, sets the standard for effectiveness of counsel and it was a case involving the death penalty. There was no abuse of discretion.

McQueen's next allegation of error is that the trial court improperly refused to admit evidence of a prior inconsistent statement purporting to impeach trial counsel Fish.

Michael Wright, an attorney employed by the Department of Public Advocacy contacted Fish offering assistance in the preparation of McQueen's defense. Wright memorialized his impressions and observations of Fish via an intra-office memorandum. It is that memorandum that McQueen seeks to enter into evidence.

McQueen asserts that the DPA memo proves that attorney Fish made an inconsistent statement concerning his reasons for not seeking a change of venue and for not seeking to challenge the jury composition.

■ One who wishes to introduce a prior inconsistent statement is required to lay a foundation. The foundation required by CR 43.08, relating to proof of prior contradictory statements, must be laid in order that Fish may have a proper and timely opportunity to testify as to his version of the statement or to explain the statement. Jett v. Commonwealth, Ky., 436 S.W.2d 788 (1969).

McQueen complains because the trial judge refused to admit two office memoranda made by investigator Wright.

■ Before a writing may be introduced to impeach a witness, the declarant must be given a chance to read or hear all of it and to explain it. In the absence of a showing that the alleged declarant's recollection could not have been refreshed by seeing the written statement, it should not be introduced. See Luttrell v. Common-

*wealth,* Ky. 554 S.W.2d 75 (1977). Fish was not given a proper chance to examine the document and the proper foundation was not laid. Wright's testimony and private memorandum were correctly refused.

In any event, it is clear from an examination of this record and the direct appeal that McQueen's assertions about jury composition and venue have no merit.

The trial court did not abuse its discretion by refusing to admit *Jett* statements for which no foundation had been laid. *Wise v. Commonwealth,* Ky.App. 600 S.W.2d 470, 472 (1978).

■ McQueen maintains that the trial court committed reversible error by failing to order the compulsory attendance of an out-of-state witness.

At the penalty phase of McQueen's trial, Dr. Martin Gebrow, a psychiatrist, was called to testify concerning intoxication as a mitigating factor. During this testimony, Dr. Gebrow gave his professional opinion that McQueen was a "sociopathic personality." McQueen argues that being called a sociopathic personality by his own witness is evidence of counsel's ineffectiveness.

McQueen sought to compel Dr. Gebrow's attendance for the purpose of proving counsel's inadequate investigation. McQueen relies upon KRS 421.050, which allows a defendant compulsory process for material witnesses in other states to testify in criminal prosecutions in this state.

The trial court properly denied McQueen's request to order the compulsory attendance of the out-of-state witness. This Court recently held that KRS 421.250 is not applicable to an RCr 11.42 proceeding. *Gall.* The trial court did not abuse its discretion.

■ McQueen's next argument is that he was denied due process of law because the trial court refused to order the provision of funds that were necessary to pay expert witnesses at the RCr 11.42 hearing.

McQueen sought witnesses to testify that he was prejudiced by Fish's failure to seek a change of venue and to challenge the composition of the jury. To this end McQueen requested the following:

1) Approximately $800 for Dr. Lawrence E. Noble, Jr. to analyze the content of pretrial publicity;

2) $1200 for Dr. Mike Nietzel, a psychologist, to conduct a phone survey relative to pretrial publicity and a motion for change of venue.

3) $4,000–$5,000 for James O'Reilly of North Carolina to study jury composition data for 1979 and 1980; and .

4) $300 for attorney Dennis N. Balski of Alabama to testify as an expert on effective assistance of counsel in death penalty litigation.

The total amount therefore requested by McQueen and the Department of Public Advocacy to attack the professional competence of attorney Fish was approximately $7,300.

As we have held, trial counsel was not ineffective for failing to seeking a change of venue. Expert assistance could not alter the complete lack of unfair prejudice resulting from trial counsel's considered strategy. The appointment and funding of "reasonably necessary expert assistance" is within the sound discretion of the trial court. *Young v. Commonwealth,* Ky., 585 S.W.2d 378 (1979). The trial court did not abuse its discretion. There is no error, *Gall.*

Further, we have stated that Attorney Fish was not ineffective for failure to investigate the grand and petit juries for the underrepresentation of women. The trial court acted within its discretion in denying McQueen funds for expert witnesses.

■ Finally, McQueen argues that the Commonwealth was allowed to improperly cross-examine him on matters not covered on direct examination.

McQueen testified at the RCr 11.42 hearing. The prosecution cross-examined him on matters not covered on direct examination. McQueen asserted his privilege under the Fifth Amendment and refused to answer.

The prosecution properly questioned McQueen about the murder. He was not exempt from questions about the crime at the RCr 11.42 hearing. He placed the entire question in issue and cannot escape the normal consequences of cross-examination. CR 43.06.

McQueen's conviction had already been upheld on appeal at the time of his collateral post-conviction. In the RCr 11.42 proceeding, he was not entitled to invoke the privilege against self-incrimination. *Gall; Reina v. United States*, 364 U.S. 507, 513, 81 S.Ct. 160, 164, 5 L.Ed.2d 249 (1960); *United States v. Heldt*, 668 F.2d 1238 (D.C. Cir.1981) cert. den., 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982).

We have carefully read the extensive record and we are not convinced that the case was incompetently tried or that any of the alleged errors either individually or collectively resulted in an unfair trial.

The decision of the circuit court denying McQueen's RCr 11.42 motion is affirmed.

All concur.