RENDERED: SEPTEMBER 23, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1491-MR

DOUGLAS RANK                                                        APPELLANT

APPEAL FROM KENTON CIRCUIT COURT
v.        HONORABLE JULIE REINHARDT WARD, SPECIAL JUDGE
ACTION NO. 10-CR-00186

COMMONWEALTH OF KENTUCKY                                            APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  DIXON, MCNEILL, AND TAYLOR, JUDGES.

DIXON, JUDGE:  Douglas Rank appeals *pro se* from an order of the Kenton

Circuit Court, entered February 11, 2020, denying his RCr[1] 11.42 motion.  After

careful review of the briefs, record, and law, we affirm.

---

[1] Kentucky Rules of Criminal Procedure.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

On February 21, 2010, Rank, then a practicing psychiatrist, stabbed his client and paramour, Misty Luke, with a sword. Thereafter, Rank was charged with attempted murder and retained Robert Gettys to represent him. In October 2010, Rank pled guilty to assault first degree on the Commonwealth's recommendation of a 15-year sentence but with the opportunity to argue for the minimum of 10 years. To establish the factual predicate supporting the plea, the Commonwealth noted that Luke's injuries − a collapsed lung and damage to her internal organs from a stab wound to her abdomen − required surgery and an extended hospitalization, and caused lingering mental and physical impairments.

Dr. Miller, a private forensic psychologist retained by Gettys, testified in mitigation at Rank's sentencing hearing in December 2010. Therein, Dr. Miller stated that after interviewing Rank for three-and-a-half hours, as well as reviewing the presentence investigation, the KCPC[2] report determining that Rank was competent, and Luke's deposition and victim impact statement, he diagnosed Rank with Schizotypal Personality Disorder − a treatable medical condition. Dr. Miller opined that Rank would be at an advantage for treatment because he was intelligent, introspective, and knowledgeable of the psychotherapy process, and

---

[2] Kentucky Correctional Psychiatric Center.

that successful treatment would reduce the risk to society.  Unpersuaded, the court then imposed the recommended 15-year sentence.

In December 2011, Rank filed an RCr 11.42 motion alleging various instances of ineffective assistance of counsel.  The court denied the motion but was reversed in part on appeal.  *Commonwealth v. Rank*, 494 S.W.3d 476 (Ky. 2016).  On remand, in accordance with *Rank*, an evidentiary hearing was held to ascertain (1) the reasonableness of Gettys' investigation into the viability of an extreme emotional distress (EED)[3] defense, and (2) whether Gettys advised Rank as to the merits of pursuing an EED defense at trial as opposed to entering the plea.

At the hearing, Rank called Doug Hamilton, Larry Hamilton, and Larry Hamilton, Jr. (collectively "the Hamiltons") to give their accounts of the night of the attack.  They testified that while they were watching television on the

---

[3]  In *McClellan v. Commonwealth*, 715 S.W.2d 464, 468-69 (Ky. 1986), EED was defined as:

> a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the [EED] rather than from evil or malicious purposes.  It is not a mental disease in itself, and an enraged, inflamed, or disturbed emotional state does not constitute [EED] unless there is a reasonable explanation or excuse therefor, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under circumstances as defendant believed them to be.

Additionally, Kentucky courts have long held that the defense requires proof that the EED was caused by a sudden and uninterrupted triggering event.  *See, e.g.*, *Holland v. Commonwealth*, 114 S.W.3d 792, 807 (Ky. 2003); *Fields v. Commonwealth*, 44 S.W.3d 355, 359 (Ky. 2001).

-3-

second floor of their building, they heard screaming from the third floor where Rank resided. On the third floor, Doug and Larry, Jr., found Rank physically struggling with Luke, yelling that he was going to kill her, striking at her with a sword, and threatening Doug when he attempted to intercede. Doug was able to distract Rank by throwing a book in his face, ultimately disarming him and removing Luke from the room. Rank remained agitated, struggled with Doug and Larry, and expressed his desire to retrieve his gun in order to commit "suicide by cop." The Hamiltons assert that Rank's behavior was out of character generally, and specifically, Doug stated that Rank had been calm and collected earlier in the evening. The Hamiltons denied that anyone from Rank's defense team ever discussed the attack with them.

Rank testified that his relationship with Luke had been tense in the time preceding the attack and the two fought frequently about, among other issues, whether she had relapsed. On the day prior to the attack, Luke was with her sister, with whom Rank suspected she had relapsed; she did not come to bed, and she was not there in the morning. On the day of the attack, Rank returned to the building and, after briefly stopping on the second floor to speak with the Hamiltons, saw Luke on the third floor. Not wanting to fight, Rank went to a side room where he kept the sword. After a terse phone conversation with Luke, Luke texted Rank saying she was leaving him and ending the relationship. Rank testified that ten

seconds later, agitated and enraged, he grabbed the sword for an unknown purpose, went into their room, and saw himself stabbing Luke.

Rank claimed that neither Gettys nor Patrick Hickey, who assisted Gettys, ever inquired about the attack or explained to him what EED was, the merits of an EED defense, what investigation had been conducted, or what his defense would be at trial, though he admits Gettys investigated both insanity and involuntary intoxication defenses. Rank admitted that he never attempted to recall what occurred during the attack until after his RCr 11.42 motion was denied in May 2012, explaining that no one, including Gettys or Dr. Miller, ever inquired. He stated that after his motion was denied, a legal aide began to teach him about EED, and he was compelled to remember in order to write the statement of facts. Rank admits his memory of the night is not as clear as the memories he makes now, citing the fact he did not have the Hamiltons' statements until 2015, but specifically denies that he ever claimed to have no memory of the attack.

Dr. Miller testified that during his March 2010 forensic interview of Rank, Rank denied having any memory of the attack or the circumstances preceding. He also stated that, being familiar with Kentucky EED law, he had considered the defense during his evaluation of Rank but that he could not report it within reasonable medical certainty. Dr. Miller conceded that his file contains no

notations regarding EED, that he did not perform any collateral interviews with the Hamiltons or Luke, and he did not review the Hamiltons' interviews with police.

Dr. Edward Connor, a licensed clinical psychologist, testified that following his evaluation of Rank in September 2017, he considered EED a possible defense. He elaborated that he had identified a triggering event – Luke's text message saying "Thank you for the experience" – which Rank interpreted as terminating their relationship, and Rank's emotional pre-disposition to overreact due to his fear of loneliness, his history of depression and paranoia, and his alcohol and substance abuse. Dr. Connor's determination was guided by: statements made by Luke during a deposition for a civil action that she wanted to protect Rank from people attempting to take advantage of him, that Rank attacked her ten seconds after she sent the above referenced text, and that during the attack Rank's voice was strange and she did not know him; Rank's statements during Dr. Connor's evaluation that he came unglued after reading her text and he saw himself stabbing her; and the Hamiltons' statements that Rank wanted to go out in a blaze of glory.

Dr. Connor asserted that he would not have been able to formulate an opinion on EED without seeing the interviews or depositions of collateral sources, but he conceded to do so was not outside the realm of professional practice. Dr. Connor acknowledged that his evaluation benefited from several sources that were not available to Dr. Miller, including Luke's civil action deposition, and as a result,

Rank's EED defense may have improved with time. Finally, Dr. Connor conceded that the matter was complicated by the fact Rank, a trained psychiatrist, had several years to familiarize himself with EED.

Gettys affirmed that he was familiar with EED and was aware that it was a potential defense. His reported investigation included reviewing the statements of the Hamiltons and Luke to police, as well as the media coverage of the event; communicating with the Hamiltons, Luke's sister, Rank's ex-wife, numerous people in the area of Rank's home and psychiatric practice, and Luke, through Hickey; obtaining a copy of the Kentucky Board of Medical Licensure's investigation into allegations against Rank; retaining Dr. Miller with whom he discussed EED in terms of uncontrollable urges and temporary insanity; and discussing with Hickey whether to pursue an EED defense at trial.

Gettys stated that Rank denied having any memory of the relevant events, refused to answer his questions, and was physically intimidating when pressed for information. Through his investigation of other sources, Gettys learned that eight weeks preceding the attack with the sword, Rank, angry that Luke had been with her sister, threw what he erroneously led her to believe was boiling water in her face, deeply frightening her. Two weeks later, Rank struck Luke behind the ear with a mallet, which resulted in her seeking medical treatment. Gettys also learned that Rank's ex-wife claimed that he had tried to stab her with

-7-

scissors, and a former patient of his, with whom Rank had a sexual relationship resulting in his license being suspended, alleged Rank had harassed her after she tried to terminate their relationship. Gettys was concerned that pursuing an EED defense would permit introduction of these incidents as impeachment evidence. Additionally, there were allegations that Rank was improperly supplying narcotic drugs to Luke, as well as others in the community.

Citing these issues, as well as the lack of a triggering event, the fact EED was not supported by Dr. Miller's opinion, the viciousness of the attack, and his assessment that Rank – whom he described as difficult, antisocial, aloof, and smug – would not be well received by a jury, Gettys concluded an EED defense would not be successful, Rank would likely receive the maximum penalty, and the plea afforded Rank the best outcome. Gettys stated he discussed EED with Rank. However, he admitted that beyond an email from Hickey inquiring about including EED in proposed jury instructions, nothing in his file referenced EED, and he did not specifically request Dr. Miller to evaluate for EED.

After hearing the evidence, the court denied the motion, and this appeal followed. Additional facts will be presented as they become relevant.

**STANDARD OF REVIEW**

Since Rank entered a guilty plea, in order to successfully demonstrate that he was afforded ineffective assistance of counsel, he must show:

(1) that counsel made errors so serious that counsel's performance fell outside the wide range of professionally competent assistance; and (2) that the deficient performance so seriously affected the outcome of the plea process that, but for the errors of counsel, there is a reasonable probability that the defendant would not have pleaded guilty, but would have insisted on going to trial.

*Bronk v. Commonwealth*, 58 S.W.3d 482, 486-87 (Ky. 2001). *See also Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "'The likelihood of a different result must be substantial, not just conceivable.'" *Commonwealth v. Pridham*, 394 S.W.3d 867, 876 (Ky. 2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 112, 131 S. Ct. 770, 792, 178 L. Ed. 2d 624 (2011)).

"[B]oth parts of the *Strickland* test for ineffective assistance of counsel involve mixed questions of law and fact[.]" *Brown v. Commonwealth*, 253 S.W.3d 490, 500 (Ky. 2008) (citing *McQueen v. Commonwealth*, 721 S.W.2d 694, 698 (Ky. 1986)). Unless clearly erroneous, we "must defer to the determination of facts and credibility made by the trial court." *Id.* We review *de novo* "counsel's performance and any potential deficiency caused by counsel's performance." *Id.*

## ANALYSIS

As an initial matter, we must address two overarching issues regarding Rank's brief. First, dissatisfied with the court's findings of fact, Rank repeatedly requests this Court to render its own findings *de novo*. Because factual

findings, including weight and credibility determinations, are solely the province of the trial court, we decline Rank's request. *Lewis v. Bledsoe Surface Mining Co.*, 798 S.W.2d 459 (Ky. 1990).

Second, in an attempt to circumvent the page limits established by CR[4] 76.12(4)(b)(i), Rank's brief at various points merely refers this Court to pleadings he filed with the circuit court for the bases of his arguments and the supporting citations. This practice does not comport with the requirements of CR 76.12(4)(c)(v) to include an argument in the brief "with ample supportive references to the record and citations of authority pertinent to each issue of law."[5] Rank's *pro se* status does not exempt him from the rules of appellate procedure. *Koester v. Koester*, 569 S.W.3d 412, 415 (Ky. App. 2019). When a party fails to abide by the rules of civil procedure, we are permitted to ignore the deficiency, strike the brief in whole or part, or review the issues raised for manifest injustice. CR 76.12(8). In this matter, we have opted to confine our review solely to the points actually raised in the brief.

---

[4] Kentucky Rules of Civil Procedure.

[5] We find no meaningful distinction between Rank arguing via adoption by reference to prior pleadings and the sanctionable conduct of counsel raising arguments contained solely in a supplemental appendix discussed in *Hogg v. Commonwealth*, 848 S.W.2d 449 (Ky. App. 1992).

## Gettys' EED Investigation

Rank raises various challenges to the court's determination that Gettys' investigation was reasonable. We will address these in turn.

First, Rank argues the court failed to apply the correct standard, "reasonably substantial investigation," and cites *Strickland*, 466 U.S. at 680, 104 S. Ct. at 2061, in support. Misconstruing the law, Rank is incorrect. In *Strickland*, the Supreme Court rejected the lower court's pronouncement of the reasonably substantial investigation standard and held that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms" and "considering all the circumstances." *Id.* at 688, 104 S. Ct. at 2065; *accord Bronk*, 58 S.W.3d at 486-87. In the context of investigation, the Court specifically held that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066. As this is the standard the court utilized, we find no error.

Second, since Rank established that Gettys failed to specifically request that Dr. Miller evaluate him for EED, did not discuss EED with Dr. Miller, and did not provide Dr. Miller with the Hamiltons' statements to police, Rank asserts the court's determination is clearly erroneous. We conclude the court did not err in denying relief because Rank has failed to establish prejudice.

Relevantly, the court found that Dr. Miller's evaluation included consideration of EED; that Gettys discussed the defense with Dr. Miller, albeit not by name; and, regardless, Dr. Miller concluded Rank's actions were not the result of EED. These findings are supported by ample evidence, and thus, we conclude that any deficiency was harmless. As for providing Dr. Miller the Hamiltons' statements, Rank has failed to demonstrate how this prejudiced his defense when the statements provide no insight into the purported triggering event.[6] Therefore, we find no error.

Third, Rank claims the court's determination is clearly erroneous given that he proved Gettys failed to learn of relevant facts. In evaluating the reasonableness of counsel's actions, we must consider counsel's perspective at the relevant time, making every effort to eliminate the distorting effects of hindsight, and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689, 104 S. Ct. at 2065; *accord Brown*, 253 S.W.3d at 498-99. We will address Rank's specific contentions in turn.

Rank argues Gettys was deficient in failing to learn specifically of a text message from Luke which Rank asserts was the triggering event for the attack.

---

[6] Dr. Connor testified that the Hamiltons' statements were relevant in establishing the authenticity of what he determined to be a possible EED defense but that he relied on evidence from Rank and Luke to identify the triggering event.

-12-

Rank, citing the Commonwealth's statements during sentencing, maintains Gettys should have learned of the text message through discovery; however, his claim is not supported by the record since the Commonwealth did not reference the text exchange. Additionally, Rank's allegation that Gettys should have gathered this information by questioning him is refuted by the court's findings, which contrary to Rank's declaration otherwise, are supported by substantial evidence that Gettys and Dr. Miller inquired as to the events of the attack and Rank denied having any memory. Finally, given that Luke did not disclose the text exchange during Gettys' deposition of her, Rank contends that the deposition was inherently infirm. We are unable to evaluate the merits of this claim, however, because Rank failed to introduce the deposition or any relevant evidence. Accordingly, Rank has failed to demonstrate that Gettys' failure to learn of the text was the result of an unreasonable investigation, and we find no error.

Next, citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 575, 105 S. Ct. 1504, 1512, 84 L. Ed. 2d 518 (1985), Rank challenges the court's finding that Gettys interviewed the Hamiltons about the case. In *Anderson*, the Court stated that a finding based on a determination of credibility is not immune to reversal if the finding is refuted by documentary or objective evidence or is "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Id.* However, a court's decision to credit the coherent, facially

plausible story of one witness over another can virtually never be clear error. *Id.*; *See also Potts v. Commonwealth*, 172 S.W.3d 345, 349-51 (Ky. 2005). Here, Gettys' testimony supports the court's finding, and the sole contradictory evidence – the testimony of the Hamiltons, who are self-proclaimed friends of Rank – is not of the caliber delineated in *Anderson* and *Potts* to undermine the court's inherent authority to decide credibility. Hence, we find no error.

Rank further asserts Gettys was deficient in not obtaining the Hamiltons' statements to police prior to discovery in June 2010 and failing to specifically ask them about Rank's perceived state of mind in order to ascertain that he was out of control and enraged. We are unable to conceive how the former prejudiced Rank. Likewise, though Gettys stated he could not recall if he asked the Hamiltons that exact question, we are unable to find harm when Gettys stated that he inferred from speaking with them that Rank was out of control and enraged.

Lastly on the issue of investigation, Rank argues Gettys was deficient for failing to know that Larry Hamilton had estimated in his police interview that the attack occurred 15 minutes after Rank's brief, unextraordinary visit.[7] Rank contends this knowledge was critical to his EED defense as it demonstrates the sudden onset of the rage which precipitated the attack. For the reasons we will

---

[7] At the evidentiary hearing, Doug Hamilton estimated two hours elapsed between seeing Rank and the attack, and Larry Hamilton estimated one hour.

detail in our analysis of Gettys' plea advice, we conclude that even if this lack of memory a decade after the fact supports a finding of deficiency, Rank has failed to establish that but for this oversight, he would have elected to go to trial.

**Gettys' Plea Advice**

We turn now to Rank's claims pertaining to the court's finding that Gettys was not deficient in rendering plea advice.

First, Rank asserts that the court's finding that Gettys advised him as to EED was not supported by any evidence and repeats his denial that he was aware of the defense. We disagree, however, since Gettys testified specifically that he did discuss EED with Rank.

Finally, Rank essentially argues that Gettys' plea advice was deficient because he did not comprehend the legal requirements for EED. A guilty plea cannot be attacked on the basis of deficient legal advice unless the advice was not "'within the range of competence demanded of attorneys in criminal cases[.]'" *Commonwealth v. Tigue*, 459 S.W.3d 372, 391 (Ky. 2015) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 1449, 25 L. Ed. 2d 763 (1970)). We note that Gettys accurately identified the legal standard for EED and the potential range of punishment Rank faced. Further, as detailed above, at the time of the plea, the viability of an EED defense was impeded by the lack of evidence of a triggering event. Gettys testified that his recommendation to accept the plea to a

sentence five years less than the maximum with the opportunity for ten years less was based on his reasoned evaluation of the weakness of an EED defense, the viciousness of the attack, the potential for detrimental impeachment evidence, and his assessment that a jury would not be receptive to Rank. Under the circumstances, we conclude that Gettys' advice was not unreasonable, and consequently, the court did not err in denying relief.

## CONCLUSION

Therefore, and for the foregoing reasons, we affirm the order of the Kenton Circuit Court denying Rank's RCr. 11.42 motion.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Douglas Rank, *pro se* West Liberty, Kentucky | Daniel Cameron Attorney General of Kentucky |
| | Perry T. Ryan Assistant Attorney General Frankfort, Kentucky |