RENDERED: AUGUST 4, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0421-MR

RAY HACKER, JR.                                                                   APPELLANT

APPEAL FROM JACKSON CIRCUIT COURT
v.          HONORABLE OSCAR G. HOUSE, JUDGE
ACTION NO. 10-CR-00036

COMMONWEALTH OF KENTUCKY                                           APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, DIXON, AND ECKERLE, JUDGES.

DIXON, JUDGE: Ray Hacker, Jr., appeals from the order denying his RCr[1] 11.42 motion to vacate, set aside, or correct his judgment of guilt and sentence, entered on March 10, 2022, by the Jackson Circuit Court. Following a careful review of the record, briefs, and law, we affirm.

---

[1] Kentucky Rules of Criminal Procedure.

# BACKGROUND FACTS AND PROCEDURAL HISTORY

Direct appeal of this case was affirmed by the Supreme Court of

Kentucky in *Hacker v. Commonwealth*, No. 2015-SC-000170-MR, 2016 WL

2605243, at *1 (Ky. May 5, 2016).  We adopt those facts:

> This case originally went to trial on February 14, 2012.  Following trial, the jury convicted Hacker of murder, and he appealed to this Court as a matter of right.  This Court reversed and remanded for a new trial because the trial court had erroneously permitted the Commonwealth to introduce into evidence a police report regarding a prior incident of domestic violence involving Hacker and Walerski.  *Hacker v. Commonwealth*, No. 2012-SC-000269-MR, 2014 WL 1664232 (Ky. 2014).  In our previous opinion, we set forth the following relevant facts:
>
> > Having recently relocated from Florida, Ray Hacker and girlfriend Gerilyn Walerski shared a rented room in the home of Jackson County, Kentucky resident Raymond Crouch.  On June 13, Crouch's stepdaughter Connie Worthington, who was visiting Crouch at the time, witnessed Hacker and Walerski drinking and bickering throughout the day.  That afternoon, Crouch and Worthington watched Hacker enter the living room, retrieve a rifle from behind a flag-stand, and head toward the bedroom that he shared with Walerski.  After hearing what Worthington described as the sound of a B.B. gun firing, Crouch confronted Hacker, who stated that "there was only one [bullet] in the gun and it's in the back of her head."  Hacker then began to suffer a seizure and left the residence, but remained on the front porch until the police arrived.  First responders found Walerski lying on the floor having suffered a fatal gunshot wound to the head.

*Id.* at *1.

During the first trial, Hacker's theory of defense was that the shooting was accidental. In support of that theory, Hacker testified that he heard a scream coming from the bathroom and, when he opened the bathroom door, he found Walerski pointing the rifle at her own head. According to Hacker, he and Walerski struggled for control of the rifle and, during the struggle, it accidentally discharged, killing Walerski. During the second trial, Hacker planned to use a new and alternative theory of defense – that he shot Walerski while under the influence of extreme emotional disturbance.

At a pretrial conference, the Commonwealth stated that it intended to use video recordings from the first trial of the testimony of Savannah Gibson and Raymond Crouch. Because Gibson was in labor and Crouch had died, the court deemed that neither was available. The court asked Hacker if he wanted to continue the trial until Gibson could be available, but he declined the court's offer, stating that he did not object to the admission of Gibson's testimony. However, Hacker objected to the admission of Crouch's testimony arguing that he would not be able to cross-examine Crouch based on his new theory of defense. The court overruled Hacker's objection and permitted the Commonwealth to play video of the testimony of Gibson and Crouch from the first trial.

In support of his new theory of defense, Hacker provided evidence that: he and Walerski had been consuming alcohol and pills throughout the day; he and Walerski constantly argued and were arguing that day; Walerski was often the instigator of such arguments; and during their argument that day Walerski accused him of being responsible for the death of his son. The jury was not swayed by Hacker's extreme emotional disturbance

defense, and it convicted him of murder and
recommended a sentence of 50 years' imprisonment.

*Id.* at *1-2 (footnotes omitted). The Supreme Court found no reversible error and

affirmed. Hacker then moved the trial court to vacate the judgment and sentence

pursuant to RCr 11.42, claiming he had ineffective assistance of counsel at his

second trial. After an evidentiary hearing, the trial court denied his motion, and

this appeal followed.

## STANDARD OF REVIEW

As established in *Bowling v. Commonwealth*, 80 S.W.3d 405, 411-12

(Ky. 2002):

> [t]he *Strickland* standard sets forth a two-prong test for
> ineffective assistance of counsel: [f]irst, the defendant
> must show that counsel's performance was deficient.
> This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed by the Sixth Amendment. Second, the
> defendant must show that the deficient performance
> prejudiced the defense. This requires showing that
> counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable.
> *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct.
> 2052, 2064, 80 L. Ed. 2d 674, 693 (1984). To show
> prejudice, the defendant must show there is a reasonable
> probability that, but for counsel's unprofessional errors,
> the result of the proceeding would have been different. A
> reasonable probability is the probability sufficient to
> undermine the confidence in the outcome. *Id.* at 694, 104
> S. Ct. at 2068, 80 L. Ed. 2d at 695.

Both *Strickland* prongs must be met before relief may be granted. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In the instant case, we need not determine whether Hacker's counsel's performance was adequate on the issue raised on this appeal because Hacker fails to demonstrate prejudice resulting from counsel's alleged deficient performance.

To establish prejudice, a movant must show a reasonable probability exists that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694, 104 S. Ct. at 2068. In short, one must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687, 104 S. Ct. at 2064. Fairness is measured in terms of reliability. "The likelihood of a different result must be substantial, not just conceivable." *Commonwealth v. Pridham*, 394 S.W.3d 867, 876 (Ky. 2012) (quoting *Harrington v. Ritcher*, 562 U.S. 86, 100, 131 S. Ct. 770, 791, 178 L. Ed. 2d 624 (2011), citing *Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067)).

## LEGAL ANALYSIS

On appeal, Hacker first argues that his counsel was ineffective by failing to produce witnesses essential to the theory of his defense of extreme

emotional disturbance (EED). This theory centered on Walerski's accusation that Hacker was responsible for his son's death. While Hacker asserts he was the primary witness in the first trial about the details of his son's death, and contrary to his argument on appeal, those details were not critical to the jury's ability to find EED, had they chosen to do so.

Our review of the record reveals that, although Hacker could have supplied further evidence by testifying at his second trial, Hacker's testimony probably would have harmed rather than helped his defense. Hacker testified at the evidentiary hearing that Walerski's comments about his son's death did not have any effect on him at the time she was shot because he was already over it.

Moreover, Hacker's counsel allowed him to testify at his first trial and found him to be a "loose cannon" with potential to offend the jury. Accordingly, counsel felt it was in Hacker's best interest not to testify at the second trial and so advised. Even so, the decision not to testify was ultimately Hacker's; therefore, he cannot now complain.

Furthermore, Hacker has not specifically detailed what other evidence could have been offered in his defense to demonstrate EED. During the second trial, the Commonwealth presented the testimony of Raymond Crouch, deceased,

from the first trial and also called Connie Worthington.  This testimony supported

Hacker's EED defense.[2]

Hacker asserts counsel was ineffective for failing to call his sister,

Diana McQueen.  McQueen testified at the evidentiary hearing that she did not

know much about Hacker's son, but his death had something to do with a train and

losing him was hard on Hacker.  Hacker failed to show how McQueen's testimony

would add anything new to his defense.  *See Williams v. Commonwealth*, 336

---

[2]  The Supreme Court of Kentucky summarized their testimony as:

> Crouch testified on cross-examination that:  Hacker and Walerski
> argued all the time; he never heard Hacker threaten Walerski but
> heard Walerski threaten Hacker on multiple occasions; he had
> never seen Hacker hit Walerski but had seen Walerski hit Hacker;
> both Hacker and Walerski drank a great deal every day and
> Walerski was "nuts" when she drank; Hacker and Walerski were
> fighting and drinking the day Walerski was shot; and Hacker had a
> seizure after Walerski was shot.  These facts support Hacker's
> [EED] theory of defense in his second trial[.]
>
> . . .
>
> Worthington testified that:  Walerski hated living in Kentucky and
> always blamed Hacker for making her move from Florida;
> Walerski blamed Hacker for wrecking his car; Walerski blamed
> Hacker for the death of his son; she had seen Walerski hit Hacker
> but had never seen Hacker hit Walerski; Hacker and Walerski were
> always drinking; and Walerski was "a pure bitch," "obnoxious,"
> and "embarrassing."  As to the day of the murder, Worthington
> testified that Hacker and Walerski were arguing and during this
> argument Walerski again accused Hacker of causing his son's
> death, to which Hacker responded "shut your F-ing mouth," which
> was the loudest Worthington had heard Hacker yell that day.  This
> testimony by Worthington supported Hacker's [EED] defense.

*Hacker*, 2016 WL 2605243, at *3, 4.

S.W.3d 42 (Ky. 2011) (RCr 11.42 movant's failure to specify what evidence potential witnesses would have provided was fatal to his claim that counsel was ineffective in having failed to subpoena them).

During closing, Hacker's counsel made a very compelling argument which was sufficient for the jury to find EED. However, it was the jury's prerogative to find Hacker guilty of murder as the first jury had done.

Ultimately, Hacker has failed to demonstrate that his counsel violated either of *Strickland*'s prongs by not presenting further evidence on behalf of his EED claim. Therefore, we must affirm.

Hacker next argues his counsel was ineffective for failing to investigate and prepare for the penalty phase of his second trial and failing to present mitigating evidence. Hacker's counsel testified at the evidentiary hearing that he intended to call McQueen to testify during the penalty phase of the second trial, as she had done at the first, but she was too emotional and refused. McQueen's testimony at the evidentiary hearing was that she was not approached by counsel and that when she approached him to testify, he told her it would not be a good idea. Hacker also points out that his counsel did not call his mother, Joan Hacker, to testify. Counsel testified that he did not call Joan as a witness because she was even more upset than McQueen and unable to testify. "The totality of the circumstances surrounding the . . . trial and the subsequent RCr 11.42 hearing

provides ample evidence of the trial court's opportunity to see the witnesses and observe their demeanor on the stand, and recognition must be given to its superior position to judge their credibility and the weight to be given their testimony." *McQueen v. Commonwealth*, 721 S.W.2d 694, 698 (Ky. 1986). Here, the trial court believed counsel's testimony over McQueen's. The trial court then correctly found that counsel cannot be held responsible when a witness refuses or is unable to testify.

Hacker also claims his counsel was ineffective in his cross-examination of the Commonwealth's witness during the penalty phase. Yet, Hacker fails to present any further questions that should have been asked. Thus, he fails to properly allege a claim justifying relief under RCr 11.42 on that issue. To be entitled to relief under RCr 11.42, one must "state specifically the grounds on which the sentence is being challenged and the facts on which the movant relies in support of such grounds." RCr 11.42(2). "Conclusory allegations that counsel was ineffective without a statement of the facts upon which those allegations are based do not meet the rule's specificity standard and so 'warrant a summary dismissal of the motion.'" *Roach v. Commonwealth*, 384 S.W.3d 131, 140 (Ky. 2012).

Hacker's final argument is that his Sixth Amendment autonomy right was violated when counsel pursued a defense that he shot Walerski while under the influence of EED. This argument is belied by the record in which Hacker clearly

-9-

stated to the trial court during the second trial that it was his decision not to testify.

Hacker was given the opportunity to object to this line of defense on the record but

declined to do so.[3]  At the evidentiary hearing, counsel testified that although

Hacker maintained his innocence and never assumed responsibility for Walerski's

death, Hacker agreed not to testify and allowed counsel to pursue an EED defense

at the second trial.  Thus, Hacker has not shown that his autonomy was encroached

upon.

## CONCLUSION

Therefore, and for the foregoing reasons, the order upholding

Hacker's judgment and sentence entered by the Jackson Circuit Court is

AFFIRMED.

---

[3]  When a defendant objects to a concession of guilt, he must make an objection on the record.

> The requirement of an objection on the record is only logical.  Should an attorney concede guilt to the charged crime, the trial court can only presume that such a concession is part of a legitimate and agreed upon strategy absent an objection from the defendant himself.  It is absurd to suggest otherwise, as that would force the trial court to divine whether the defendant does in fact have an objection to a concession of guilt.  A competent defendant, capable of assisting in his own defense, is also capable of lodging such an objection to the trial court.  We will not interpret [*McCoy v. Louisiana*, 138 S. Ct. 1500, 200 L. Ed. 2d 821 (2018)] in such a way that allows a defendant to sleep on his rights and allege a structural error after his direct appeal has proven unsuccessful.

*Epperson v. Commonwealth*, 645 S.W.3d 405, 408 (Ky. 2021).

ALL CONCUR.


BRIEF FOR APPELLANT:                    BRIEF FOR APPELLEE:

David L. Stewart                        Daniel Cameron
LaGrange, Kentucky                      Attorney General of Kentucky

                                        Christina L. Romano
                                        Assistant Attorney General
                                        Frankfort, Kentucky